**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|   |   |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) Plaintiff, ) ) v. ) ) ARYEH GOLDSTEIN, ADAR BAYS, LLC, ) AND ADAR ALEF, LLC. ) ) Defendants. ) ) | Civil Action No. _____  JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission (the "Commission" or "SEC"), for its complaint against Defendants, Aryeh Goldstein, and Adar Alef, LLC and Adar Bays, LLC (together "the Adars"), hereby alleges as follows:

## SUMMARY

1. Since at least 2014, Defendants engaged in the business of lending money to companies whose stock was publicly traded (often referred to as a "public company" or an "issuer" of stock), through convertible debt agreements. The public companies that the Defendants loaned money to were small companies typically referred to as "penny stock" companies. These convertible debt agreements contained provisions allowing Defendants, in the event of the borrowers' nonpayment, to convert unpaid debt and interest into newly-issued discounted stock after a waiting period of six to twelve months. Stock obtained in this manner was discounted—30% to 50%—from the lowest market price in the weeks leading up to the conversion. Defendants sold the discounted stock to investors on the public securities markets often at a profit, sometimes up to five times the conversion price of the discounted stock.

2.      At all relevant times, entering into convertible debt financing agreements with penny stock companies was the majority of the Defendants' business.  Over time, Defendants provided funding to numerous penny stock companies through convertible debt arrangements. By engaging in the regular business of entering into such agreements, converting the unpaid debt into newly-issued discounted stock, and selling that stock into the public securities markets, Defendants operated as unregistered securities dealers.

3.      As a matter of investor protection under the securities laws, entities, like the Adars, that act as securities dealers are required to register with the Commission.  Similarly, individuals, like Goldstein, who engage in dealer activity are required to be registered or to be associated with a dealer registered with the Commission.  Registration includes obligations to submit to inspections and oversight by the SEC, follow financial responsibility rules, and maintain required books and records. By not registering, Defendants avoided these regulatory obligations.

4.      Through this conduct, Defendants violated Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)] by acting as unregistered securities dealers.  The Commission requests that this Court enjoin Defendants from committing further violations of the federal securities laws as alleged in this Complaint, order the Defendants to disgorge ill-gotten gains along with prejudgment interest thereon, order the Defendants to pay monetary penalties based upon their violations, order penny stock bars as to each Defendant, and order the Defendants to surrender for cancellation its remaining stock and its remaining conversion rights under convertible notes issued since 2014.

## JURISDICTION AND VENUE

5. The Commission brings this action pursuant to the authority conferred by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and seeks to restrain and enjoin Defendants from engaging in the acts, practices, transactions and courses of business alleged herein, and for such other equitable relief as may be appropriate for the benefit of investors.

6. This Court has jurisdiction over this action, and venue lies in this District, pursuant to Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa]. Defendants, directly or indirectly, have made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein.

7. Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, and transactions and courses of business alleged in this Complaint occurred within the Southern District of Florida and elsewhere, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails.

8. There is a reasonable likelihood that Defendants will, unless enjoined, continue to engage in the transactions, acts, practices, and courses of business set forth in this Complaint.

## DEFENDANTS

9. **Aryeh Goldstein,** age 51, is a resident of Miami Beach, Florida. He is the sole owner and Managing Member of the Adars and exercised control over both during the relevant period. Goldstein has never been registered with the Commission as a dealer or in any other capacity.

10. **Adar Bays, LLC** is a limited liability company formed in Florida in 2014 and based in Miami Beach, Florida. It is solely owned and controlled by Goldstein, as its Managing Member. Goldstein used Adar Bays to facilitate convertible debt financing transactions and related stock sales. Adar Bays has never been registered with the Commission as a dealer or in any other capacity.

11. **Adar Alef, LLC,** a Nevada limited liability company, was originally formed in New York by Goldstein in 2018. In 2020 Adar Alef became a Nevada LLC and was subsequently registered to do business in Florida. Adar Alef is owned and controlled by Goldstein, its sole Managing Member. Goldstein used Adar Alef to facilitate convertible debt financing transactions and related stock sales. It has never been registered with the Commission as a dealer or in any other capacity.

## FACTS

**The Defendants' Convertible Debt Financing Business.**

12. Adar Bays became involved in the convertible debt business in 2014. Convertible debt agreements between a public company borrower and a lender like the Defendants contain provisions allowing the lender to convert the unpaid debt into newly-issued discounted stock of the public company borrower if the borrower fails to meet its repayment obligations. Convertible debt lenders are then able to sell their discounted shares to investors on the open market, generally at a considerable profit. Lending money to penny stock companies through convertible debt agreements constituted the majority of Defendants' business at all relevant times.

13. Adar Bays was formed in 2014 for the purpose of lending money to distressed penny stock companies via convertible debt agreements, and Adar Alef was formed in 2018 to enter into new convertible debt agreements, while maintaining Adar Bays for existing deals.

14. Defendants grew their business by word-of-mouth. As Defendants entered into more and more convertible debt agreements with penny stock companies, additional companies approached Defendants directly and through third parties seeking convertible debt financing. In addition to attracting business by word-of-mouth, Defendants' convertible debt agreements were disclosed in the borrower companies' public disclosures, further raising awareness of Defendants' business.

15. Over time, Defendants entered into convertible debt agreements with at least 134 separate issuers. During the same period, Defendants converted large amounts of issuer unpaid debt into discounted stock of the borrower companies, generating trading profits from investment returns. While Defendants traded in their own account on their own behalf to generate these profits, they also provided a conduit by which the issuers' newly-issued stock reached the securities markets.

**The Anatomy of the Debt Financing Agreements.**

16. Defendants extended cash loans to penny stock companies pursuant to Stock Purchase Agreements ("SPAs") that typically provided the issuer with a six-month window to pay off the loan in cash. Although it was theoretically possible that issuers could pay Defendants back within the first six months, the SPAs provided for a substantial premium for cash repayment—typically 140% of the amount due plus other charges and interest. After the initial six-month cash repayment period, the issuers typically lost the right to repay in cash without Defendants' consent.

17. After the six-month cash repayment period, Defendants generally had the right to convert the amount due under the SPA into newly-issued shares of the issuer's stock. The stock Defendants received was significantly discounted, generally 30% to 50% off the lowest trading price in the days preceding the conversion. So, for example, if an issuer's shares were trading at a low of $0.04 per share prior to the conversion, a 50% discount would be $0.02 per share. The amount of stock Defendants received at conversion was determined by dividing the total amount due under the SPA by the discounted share price. For example, if an issuer owed $1,000 and the discounted share price was $0.02 per share, Defendants would receive 50,000 shares (1,000 divided by 0.02). When Defendants then sold the discounted stock at, for example, a market price of $0.04 per share, the proceeds of the sale would be $2,000 yielding a $1,000 profit.

**Defendants Were Not Registered with the SEC as Dealers.**

18. Since at least 2014, Defendants, as part of a regular business, entered into numerous SPAs with numerous penny stock companies, exercised their conversion right to obtain large amounts of deeply discounted stock, and then sold the discounted stock into the market often for a profit.

19. Defendants used means or instrumentalities of interstate commerce to buy and sell securities. For example, Defendants placed trades on national securities exchanges through a broker and communicated with the borrower companies and brokers using national telephone and other electronic communications networks.

20. Through the conduct described above, Defendants acted as dealers without registering with the SEC as dealers or associating with a registered dealer. A person who seeks to register with the Commission as a dealer must file an application on a form called Form BD.

To register as a dealer, the applicant must meet the statutory requirements to engage in a business that involves high professional standards.

21. Registration with the Commission requires the dealer to provide important information about its business, including but not limited to the names of the direct and indirect owners and executive officers of the business, certain arrangements with other persons or entities, the identities of those who control the business, the states in which the dealer does business, past criminal or regulatory actions against the dealer or any affiliated person that controls the business, and financial information, including bankruptcy history. Registration also requires the dealer to join a self-regulatory organization, or a national security exchange, which assists the Commission in regulating the activities of registered dealers. Finally, registered dealers are subject to inspection by Commission staff and the Financial Industry Regulatory Authority ("FINRA") to monitor compliance with the securities laws.

**Defendants Bought and Sold Penny Stocks.**

22. Virtually all of the stock Defendants bought and sold were penny stocks that did not meet any of the exceptions from the definition of a "penny stock," as defined by Exchange Act Section 3(a)(51) and Exchange Act Rule 3a51-1. [15 U.S.C. Section 78c(a)(51); 17 C.F.R. Section 240.3a51-1].

23. Defendants therefore participated in the offering of penny stock to investors by acting as securities dealers engaged in the buying and selling of penny stocks.

## COUNT I

### Violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)]
**(Against All Defendants)**

24. The Commission re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 23 above.

25. By engaging in the conduct described above, Defendants made use of the mails or other means or instrumentalities of interstate commerce to effect transactions in, to induce, and to attempt to induce, the purchase and sale of, securities as part of a regular business while not registered with the Commission as broker-dealers, and while Defendants were not associated with an entity registered with the Commission as a broker-dealer.

26. By reason of the foregoing, Defendants violated, and unless enjoined will likely again violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## **RELIEF REQUESTED**

WHEREFORE, the Commission respectfully requests that this Court:

A. Enter a permanent injunction restraining each of the Defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with Defendants who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices, or courses of business described above, or in conduct of similar purport and object, in violation of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

B. Order Defendants to disgorge ill-gotten gains and/or unjust enrichment received directly or indirectly, with pre-judgment interest thereon, as a result of the violations alleged herein, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)].

C. Impose appropriate civil penalties upon Defendants pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

D. Issue an Order restraining and enjoining Defendants from participating in the offering of any penny stock, including engaging in activities with a broker, dealer, or issuer for

purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)].

  E. Order the Defendants to surrender for cancellation its remaining stock and its remaining conversion rights under any debt financing agreements entered into since 2014.

  F. Retain jurisdiction over this action in accordance with the principles of equity and the Federal Rules of Civil Procedure to implement and carry out the terms of all orders and decrees that may be entered.

  G. Grant such orders for further relief as the Court deems just and proper.

## JURY DEMAND

The Commission hereby demands a trial by jury.

DATED:  January 17, 2024

        Respectfully submitted,

        **UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

        By its attorneys,

        */s/ Alfred A. Day*
        Alfred A. Day (Mass. BBO No. 654436)
        Lauchlan Wash (Mass BBO No. 629092)
        Ellen Moynihan (Mass. BBO No. 567598)
        Boston Regional Office
        33 Arch Street, 24th Floor
        Boston, Massachusetts  02110
        (617) 573-8900 (Main)
        (617) 573-4537 (Day)
        (617) 573-4590 (Facsimile)
        daya@sec.gov (Day)